## IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### COLUMBUS DIVISION

| | |
|---|---|
| ABC IP, LLC, a Delaware limited liability company, ) ) ) and ) ) RARE BREED TRIGGERS, INC., a Texas corporation, ) ) ) and ) ) RBTM LLC, a Wyoming limited liability company, ) ) ) Plaintiffs. ) ) v. ) ) VANCE OUTDOORS INC, an Ohio corporation, d/b/a SPORTSMAN'S OUTDOOR SUPERSTORE and VANCE OUTDOORS, and VANCE RETAIL LLC, an Ohio limited liability company, d/b/a VANCE OUTDOORS, and MICHAEL TODD VANCE, an individual, KEVIN CHANDLER, an individual, and DOUGLAS VANCE, an individual Defendants. | **CASE NO.  2:26-CV-00645** **JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement in which ABC IP LLC ("ABC"), Rare Breed

Triggers, Inc. ("Rare Breed"), and RBTM LLC ("RBTM") (collectively, "Plaintiffs") accuse

Vance Outdoors Inc. d/b/a Sportsman's Outdoor Superstore and Vance Outdoors and Vance Retail

LLC d/b/a Vance Outdoors (collectively "Vance Outdoors"), Michael Todd Vance, Kevin

Chanlder, and Douglas Vance (collectively, "Defendants") of infringing U.S. Patent Nos. 12,038,247; 12,031,784; 12,578,159; 10,514,223; 11,724,003; 12,036,336; 12,274,807; 12,636,403; infringing Plaintiff Rare Breed's trademark rights; and engaging in unfair competition as follows:

## PARTIES

1. Rare Breed is a corporation organized under the laws of the State of Texas with an address at 2710 Central Fwy, Suite 150-151, Wichita Falls, TX 76306.

2. ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, DE 19901.

3. RBTM is a limited liability company organized under the laws of the State of Wyoming with an address at 1309 Coffeen Avenue, STE 1200, Sheridan, Wyoming 82801.

4. Upon information and belief, Vance Outdoors Inc. is a corporation existing under the laws of the state of Ohio, is doing business as Sportsman's Outdoor Superstore and Vance Outdoors, and has a place of business at 3723 Cleveland Ave, Columbus, OH 43224.

5. Upon information and belief, Vance Retail LLC is a limited liability company existing under the laws of the state of Ohio, is doing business as Vance Outdoors, and has a place of business at 4250 Alum Creek Drive, Obetz, OH 43207.

6. Upon information and belief, Michael Todd Vance is an individual residing in Columbus, Ohio.

7. Upon information and belief, Kevin Chandler is an individual residing in Columbus, Ohio.

8. Upon information and belief, Douglas Vance is an individual residing in Columbus, Ohio.

COMPLAINT - 2 -

**JURISDICTION AND VENUE**

9.      This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)-(c), 281, and 284-85; trademark infringement; false designation of origin; and unfair competition under 15 U.S.C. §§ 1114 and 1125(a).

10.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

11.     Personal jurisdiction and venue over Defendants are proper in this District because Defendants reside in and/or have a place of business in this District.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendants reside in this district and/or Defendants have committed acts of infringement and have a regular and established place of business in this District.

**BACKGROUND**

13.      This lawsuit asserts (i) direct, contributory, and induced infringement of U.S. Patent Nos. 12,038,247 ("the '247 Patent"), 12,031,784 ("the '784 Patent"), 12,578,159 ("the '159 Patent"), 10,514,223 ("the '223 Patent"), 11,724,003 ("the '003 Patent"), 12,036,336 ("the '336 Patent"), 12,274,807 ("the '807 Patent), and 12,636,403 ("the '403 Patent) (together, "the Asserted Patents"); and (ii) trademark infringement, false designation of origin, and unfair competition with regard to Rare Breed's well-known FRT® trademark.

14.     The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. Each and every claim of the '247 Patent is valid and enforceable. A true and correct copy of the '247 Patent is attached as Exhibit A.

15. The '784 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 9, 2024. Each and every claim of the '784 Patent is valid and enforceable. A true and correct copy of the '784 Patent is attached as Exhibit B.

16. The '159 Patent was lawfully and properly issued by the United States Patent and Trademark Office on March 17, 2026. Each and every claim of the '159 Patent is valid and enforceable. A true and correct copy of the '159 Patent is attached as Exhibit C.

17. The '223 Patent was lawfully and properly issued by the United States Patent and Trademark Office on December 24, 2019. Each and every claim of the '223 Patent is valid and enforceable. A true and correct copy of the '223 Patent is attached as Exhibit D.

18. The '003 Patent was lawfully and properly issued by the United States Patent and Trademark Office on August 15, 2023. Each and every claim of the '003 Patent is valid and enforceable. A true and correct copy of the '003 Patent is attached as Exhibit E.

19. The '336 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. Each and every claim of the '336 Patent is valid and enforceable. A true and correct copy of the '336 Patent is attached as Exhibit F.

20. The '807 Patent was lawfully and properly issued by the United States Patent and Trademark Office on April 15, 2025. Each and every claim of the '807 Patent is valid and enforceable. A true and correct copy of the '807 Patent is attached as Exhibit G.

21. The '403 Patent was lawfully and properly issued by the United States Patent and Trademark Office on May 26. 2026. Each and every claim of the '403 Patent is valid and enforceable. A true and correct copy of the '403 Patent is attached as Exhibit H.

22.     ABC is the owner by assignment of all right, title, and interest in and to the Asserted Patents. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO").

23.     RBTM is the owner, and Rare Breed has the exclusive right to enforce the trademark FRT and variations thereon ("the FRT Marks"), including the right to enforce the marks against infringers. Since at least 2020, the FRT mark has been used by Rare Breed to identify a unique trigger system for firearms, which has been a remarkably successful offering. As a result of the long-term and high-profile use, the FRT trademark has come to be uniquely identified with Rare Breed and a valuable identifier of Rare Breed's products. In addition to strong common law rights in the FRT trademark, Rare Breed has exclusive rights to enforce the following federally registered trademarks and pending applications:

| Mark | Goods | App. no. | Reg. no. | App. date | Reg. date |
|---|---|---|---|---|---|
| FRT | triggers for firearms | 97248519 | 8187914 | 2022-02-01 | 2026-03-24 |
| FRT-15 | triggers for firearms | 97245949 | 7004418 | 2022-01-31 | 2023-03-21 |
| FRT-22 | triggers for firearms | 97248530 | 8232406 | 2022-02-01 | 2026-04-28 |
| FRT-47 | triggers for firearms | 97248528 | 8232405 | 2022-02-01 | 2026-04-28 |
| FRT-MR3 | triggers for firearms | 99714625 | | 2026-03-20 | |
| FRT-RD3 | triggers for firearms | 99714703 | | 2026-03-20 | |
| FRT-15L3 | triggers for firearms | 98715335 | 8225451 | 2024-08-24 | 2026-04-21 |

Together, Rare Breed's common law rights in and federal trademark registrations and pending applications are referred to as the "FRT Marks."

24.     Rare Breed is the exclusive licensee of the Asserted Patents and all substantial the FRT Marks, including the exclusive right to enforce the FRT Marks.

COMPLAINT - 5 -

25.     Plaintiffs have complied with the requirements of 35 U.S.C. § 287 either because the Asserted Patents are not practiced by ABC or any licensee and/or because any licensee has been required to mark its product.

26.     Upon information and belief, Defendants have committed acts of direct, contributory and/or induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

## The Inventions

27.     By way of background, a typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

28.     In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the

trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

29. In contrast, in a forced reset trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be forced to the reset position and hold the trigger member there until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

30. The '223 Patent describes and claims a device in which the cycling of the action causes hammer contact with the trigger member to forcefully reset the hammer and trigger member. A locking bar prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position.

31. The '003 Patent, the '336 Patent, the '807 Patent, and the '403 Patent describe and claim a similarly operating device with the additional feature that it can be selected to operate in either of two distinct modes: 1) standard disconnector semiautomatic mode and 2) forced reset semiautomatic mode.

32. The '247 and '159 Patents provide a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow an accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a forced reset semiautomatic mode and uses a cam, rotated by cycling of the action, to force the trigger member to reset and prevent the trigger member from being pulled again until the action has returned to the in-battery position.

33. The '784 Patent relates to an extended trigger member locking device having a locking member that is movable between a first position in which it locks a trigger member against pulling movement and a second position where it does not restrict movement of the trigger member. The locking member is configured to be movably supported by a frame and includes a generally upward extension portion configured to make actuating contact with a surface of a bolt carrier. The locking member has a body portion that is movably supported and an upward extension portion that is separately movable relative to the body portion between an extended position and a deflected position.

34. The claims of the Asserted Patents define the scope of the patented inventions.

## The Infringing Devices

35. On information and belief, Defendants are currently making, using, selling, and/or offering for sale the Atrius 3-Position Forced Reset Selector and Atrius 3-Position Ambidextrous Forced Reset Selector, which embodies the technology claimed in at least the '247, '784, '159, and '403 Patents.

36. On information and belief, Defendants are making, using, selling, and/or offering for sale the Atrius 3-Position Forced Reset Selector and Atrius 3-Position Ambidextrous Forced Reset Selector via the websites https://www.sportsmansoutdoorsuperstore.com/ and https://www.vanceoutdoors.com/ in multiple variants:

   a. As a standalone product; and/or

   a. In conjunction with separate trigger mechanism parts.

37. Exemplary photographs are shown below:





38. The Atrius 3-Position Forced Reset Selector and Atrius 3-Position Ambidextrous Forced Reset Selector can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic with cam modes by rotating the safety selector between positions.

39. On information and belief, Defendants are also currently making, using, selling, and/or offering for sale a Disruptor 3-Position Drop In Forced Reset Trigger ("Disruptor"), which embodies the technology claimed in at least the '223, '003, '336, '807, and '403 Patents. Peak

Tactical, LLC, d/b/a Partisan Triggers, recently changed its business name to "The Triggered Company," continuing to make and sell the Disruptor trigger. As used herein, "Disruptor" refers to the trigger made or sold under either the Partisan Triggers or The Triggered Company brand.

40.    On information and belief, Defendants are making, using, selling, and/or offering for sale the Disruptor via the websites https://www.sportsmansoutdoorsuperstore.com/ and https://www.vanceoutdoors.com/.

41.    Exemplary photographs are shown below:





42.     The Disruptor can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger.   The user can switch between safe, standard semiautomatic with disconnector, and forced reset or semiautomatic modes by moving the safety selector between positions.                         As                 shown                 here, https://www.sportsmansoutdoorsuperstore.com/products2.cfm/ID/355825/ptdsptrfrtgrn/partisan--disruptor-3-position-drop-in-forced-reset-trigger-(green), Defendants' website refers to these three modes as "Safe," "Semi-Automatic," and "Enhanced Semi-Automatic" modes, respectively.

43.     When the Disruptor operates in the forced reset mode, the cycling of the action causes hammer contact with the trigger member to forcefully reset the hammer and trigger member. A locking bar/member prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position according to the invention described and claimed in the '223 Patent. The presence of another mode of operation in the Partisan Disruptor does not affect the infringement analysis as to the '223 Patent claims.

44.     As claimed in the '003 Patent, the '336 Patent, the '807 Patent, and the '403 Patent, the Partisan Disruptor has the additional feature that it can be selected to operate in either of two distinct modes: 1) standard disconnector semiautomatic mode and 2) forced reset semiautomatic mode.

45.     When in the standard semi-automatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm again.

46. When in the forced reset semi-automatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

47. The website of Peak Tactical, LLC, the manufacturer of the Disruptor, whether operating under the brand Partisan Triggers or The Triggered Company, includes a page titled "FRT Legal Library" at https://partisantriggers.com/library/ (now https://triggeredcompany.com/library/). This web page links to copies of several documents, including the '223 Patent, the '003 Patent, and the '336 Patent, showing that Partisan Triggers (now The Triggered Company) and its principals were and continue to be aware of Plaintiffs' patent rights and that they are relevant to the product it is making, using, selling, offering for sale, and/or importing. This provides notice of Plaintiffs' patent rights to reseller customers of the Disruptor, including the Defendants.

48. Upon information and belief, Michael Todd Vance is a principal or the sole principal of Vance Outdoors and had knowledge of Plaintiffs' patent rights at least by his access to and knowledge of the FRT Legal Library on Partisan Triggers' website.

49. Upon information and belief, Michael Todd Vance directed Vance Outdoors to infringe the Plaintiffs' patent rights.

50. Upon information and belief, Kevin Chanlder is a principal or the sole principal of Vance Outdoors and had knowledge of Plaintiffs' patent rights at least by his access to and knowledge of the FRT Legal Library on Partisan Triggers' (now The Triggered Company's) website.

51.     Upon information and belief, Kevin Chanlder directed Vance Outdoors to infringe the Plaintiffs' patent rights.

52.     Upon information and belief, Douglas Vance is a principal or the sole principal of Vance Outdoors and had knowledge of Plaintiffs' patent rights at least by his access to and knowledge of the FRT Legal Library on Partisan Triggers' (now The Triggered Company's) website.

53.     Upon information and belief, Douglas Vance directed Vance Outdoors to infringe the Plaintiffs' patent rights.

54.     In view of the Defendants' knowledge of the Plaintiffs' patent rights as evidenced by at least the FRT Legal Library on Partisan Triggers' (now The Triggered Company's) website, the infringement is willful.

55.     For the reasons explained in more specificity below, the Infringing Devices each infringe at least one claim of Asserted Patents and thus, Defendants are liable for patent infringement pursuant to 35 U.S.C. § 271(a), (b) and/or (c).

## Infringement of the FRT Marks

56.     On information and belief, Defendants are distributing, advertising, and/or selling products that do not originate with Rare Breed but that nonetheless bear or are promoted in association with the FRT Marks.

57.     Defendants are falsely associating their products with Rare Breed's well-known FRT Marks.

58.     Defendants are advertising their product as "FRT" as shown at: https://myth-industries.com/frt-triggers/. Exemplary images are shown below:

COMPLAINT - 13 -



59.     Despite Defendants' marketing, Defendants' product is **not** one of Rare Breed's FRT products.

60.     Defendants' unauthorized use of the FRT Marks to identify and promote their products is likely to mislead consumers into falsely believing that Defendants' products are in fact Rare Breed's products, or are endorsed by or associated with Rare Breed.

61.     The only reason Defendants would use the FRT Marks in connection with their products is to trade on the goodwill Rare Breed has developed in the FRT Marks, and thus Defendants' conduct is willful.

## <u>COUNT I –INFRINGEMENT OF THE '247 PATENT</u>

62. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

63. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '247 Patent, including but not limited to claim 15, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '247 Patent. Such unlicensed products include the Atrius 3-Position Forced Reset Selector and Atrius 3-Position Ambidextrous Forced Reset Selector.

64. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '247 Patent, including but not limited to claim 15, literally and/or under the doctrine of equivalents.

65. An exemplary comparison of the Atrius 3-Position Forced Reset Selector, when assembled and used as intended, with claim 15 of the '247 Patent, is illustrated in the chart below:

| Claim Language | Infringing Device (Atrius 3-Position Forced Reset Selector) |
|---|---|
| 15. A firearm trigger mechanism comprising: | When installed and used as directed, the Atrius 3-Position Forced Reset Selector is part of a forced reset trigger mechanism and functions as a cam that in at least one mode, both forces the reset of the trigger and locks the trigger during the cycle of operation.<br><br><br><br>**Atrius 3-Position Forced Reset Selector** |

| | |
|---|---|
| | https://www.sportsmansoutdoorsuperstore.com/products2.cfm/ID/352866/adgfrss/atrius-3-position-forced-reset-selector-compatible-with-mil-spec-ar-15 and https://atrius.dev/atrius-forced-reset-selector/ |
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Atrius 3-Position Forced Reset Selector (Yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (Red) that has a sear catch and a hook for engaging a disconnector (orange). (Plaintiff-generated renderings of the Atrius 3-Position Forced Reset Selector here and below) |
| to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The hammer (red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier. |

COMPLAINT - 16 -



**Hammer Set Position Above**

**Hammer Released Position Above**

| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Atrius Atrius 3-Position Forced Reset Selector (Yellow) is installed with a trigger member (Brown) in the fire control mechanism pocket that pivots on a transverse trigger member pivot axis between set and released positions and has a sear.   The trigger member (Brown) has a sear. |
|---|---|

COMPLAINT - 17 -



| | |
|---|---|
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear of the trigger member (Brown) and sear catch of the hammer (Red) are in engagement when the hammer and trigger member are in their set positions.<br><br>**Trigger Member Set Position Above** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear of the trigger member (Brown) and sear catch of the hammer (Red) are out of engagement in the released position. |



**Trigger Member Released Position Above**

| | |
|---|---|
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnector (Orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (Red). |



**Disconnector Hook Engaged**

| | |
|---|---|
| and a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Atrius 3-Position Forced Reset Selector has a cam and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* Image above depicting the Atrius 3-Position Forced Reset Selector, shown in yellow, in fire control mechanism pocket) |

<table>
<tr><td></td><td>



**Atrius 3-Position Forced Reset Selector Cam with Lobe and Lever**

</td></tr>
<tr><td>

said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position,

</td><td>

The cam is movable between a first position and a second position.



**Cam and Lobe First Position Above**

In the second position, the cam lobe forces the trigger member (Brown) toward the set position when the cam is in the forced reset semi-automatic mode.

</td></tr>
</table>



**Cam and Lobe Second Position Above**

| | |
|---|---|
| whereupon in a standard semi-automatic mode, said cam is in said first position,<br><br><br><br>rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | During at least part of the cycle in the standard semi-automatic mode, the cam is in the first position.<br><br><br><br>Rearward movement of the bolt carrier causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook catches the hammer hook. |

| | |
|---|---|
| |  |
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery,  |
| at which time a user must manually release said trigger member to free said hammer from said disconnector | at which time a user must manually release the trigger member (Brown) to free said hammer (Red) from the disconnector (Orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm |

COMPLAINT - 22 -

| | |
|---|---|
| to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and |  |
| whereupon in a forced reset semi-automatic mode,<br><br><br><br>said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, | When in the forced reset semi-automatic mode,<br><br>the cam is in the second position during at least part of the cycle and forces the trigger member toward the set position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook is prevented from catching the hammer hook. |



|  | |
|---|---|
| and thereafter the bolt carrier moves forward into battery,<br><br><br><br>at which time the user can pull said trigger member to fire the firearm. | Thereafter, the bolt carrier moves forward into battery,<br><br><br><br>at which time the user can pull said trigger member (Brown) to fire the firearm. |



66.     On information and belief, Defendants also contribute to the infringement of the '247 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the infringing device, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '247 Patent.

67.     Defendants have engaged in egregious infringement behavior with knowledge of the '247 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '247 Patent and that the '247 Patent is valid at least through the service and filing of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '247 Patent, nor could they

reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '247 Patent.

68. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '247 Patent pursuant to 35 U.S.C. § 271.

69. By their actions, Defendants' infringement of the '247 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

70. By their actions, Defendants' infringement of the '247 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

71. Defendants' infringement of the '247 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

72. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

73. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

### <u>COUNT II – INFRINGEMENT OF THE '784 PATENT</u>

74. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

75. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '784 Patent,

including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '784 Patent. Such unlicensed products include the Atrius Super Selector.

76. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '784 Patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

77. An exemplary comparison of the Atrius Super Selekctor, when assembled and used as intended, with claim 1 of the '784 Patent, is illustrated in the chart below:

| Claim 1: Language | Infringing Device (Atrius 3-Position Forced Reset Selector) |
|---|---|
| 1. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | When installed and used as directed, the Atrius **3-Position Forced Reset Selector** is part of a forced reset trigger mechanism and functions as an extended trigger member locking device.<br><br><br><br>**Atrius 3-Position Forced Reset Selector**<br>https://www.sportsmansoutdoorsuperstore.com/products2.cfm/ID/352866/adgfrss/atrius-3-position-forced-reset-selector-compatible-with-mil-spec-ar-15 and https://atrius.dev/atrius-forced-reset-selector/ |



**Atrius 3-Position Forced Reset Selector Installed**

(Plaintiff-generated renderings of the Atrius 3-Position Forced Reset Selector here and below; Locking member and bolt carrier shown here and below in section view for clarity)

| | |
|---|---|
| a locking member that is movable between a first position in which it locks a trigger against pulling movement | The Atrius **3-Position Forced Reset Selector** operates as a locking member and has a first position in which it locks the trigger member against pulling movement. |



| | **Locked First Position** |
|---|---|
| and a second position where it does not restrict movement of the trigger member, | The Atrius **3-Position Forced Reset Selector** is moveable from the first position to a second position where it does not restrict movement of the trigger member. **Unlocked Second Position** |
| the locking member configured to be movably supported by a frame | The Atrius **3-Position Forced Reset Selector** is movably (pivotally about the axis depicted below) supported by a frame (the lower receiver). |

COMPLAINT - 29 -

| | |
|---|---|
| |  |
| and including a generally upward extension portion configured to make actuating contact with a surface of the bolt carrier, | The Atrius **3-Position Forced Reset Selector** has an upward extending portion (Yellow lever arm) configured to make actuating contact with a surface of the bolt carrier.<br><br><br><br>The body portion (Purple) has a track with holes that are lined up to correspond to the selectable modes (Fire/ Standard Semi-Automatic, Forced Reset Semi-Automatic) which are positively stopped by a detent (Blue) |

|  |  **(section view of body portion (Purple), lower receiver (Grey), and detent (Blue) for clarity)**<br><br>Once installed, the body portion (Purple) is movably supported by the lower receiver (grey) using the detent (blue). |
|---|---|
| such actuating contact causing the locking member to move from the first position to the second position, | The actuation causes the locking member to move from the first position to the second position.<br><br><br>**Unlocked Second Position** |

| | |
|---|---|
| the locking member having a body portion that is movably supported | The Atrius **3-Position Forced Reset Selector** has a body portion (Purple) that is movably supported by the lower receiver.  |
| and an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position | The Atrius **3-Position Forced Reset Selector** has an upwardly extending deflectable portion (lever arm). The connection is designed to allow separate movement of the lever arm relative to the body portion between one position (depicted in red) where it is extended and another position where it is deflected (depicted in yellow).  |

| | Below illustrates the upward extending deflectable portion's (lever arm) total separate travel with an overlay of the lever in both positions without the body portion moving. |
|---|---|
| and a deflected position. | The lever is now shown deflected independent of the body. |



78.     On information and belief, Defendants also contribute to the infringement of the '784 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation

by Defendants of the components of the infringing device, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '784 Patent.

79. Defendants have engaged in egregious infringement behavior with knowledge of the '784 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '784 Patent and that the '784 Patent is valid at least through the service and filing of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '784 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '784 Patent.

80. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '784 Patent pursuant to 35 U.S.C. § 271.

81. By their actions, Defendants' infringement of the '784 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

82. By their actions, Defendants' infringement of the '784 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

83. Defendants' infringement of the '784 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

84.     Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

85.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

<u>**COUNT III –INFRINGEMENT OF THE '159 PATENT**</u>

86.     Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

87.     In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '159 Patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '159 Patent. Such unlicensed products include the Atrius Super Selector.

88.     On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '159 Patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

89.     An exemplary comparison of the Atrius Super Selector, when assembled and used as intended, with claim 1 of the '159 Patent is illustrated in the chart below.

| '159 Patent Claim 1 | Infringing Device (Atrius 3-Position Forced Reset Selector) |
|---|---|
| 1. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a | When installed and used as directed, the Atrius 3-Position Forced Reset Selector is part of a firearm trigger mechanism that uses a bolt means.  With the Atrius 3-Position Forced Reset Selector installed, the trigger mechanism operates in a |

| '159 Patent Claim 1 | Infringing Device (Atrius 3-Position Forced Reset Selector) |
|---|---|
| reciprocating bolt means, the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | standard semi-automatic mode and a forced reset semi-automatic mode<br><br><br><br>**Atrius 3-Position Forced Reset Selector**<br><br>https://atrius.dev/atrius-forced-reset-selector/<br><br><br><br>**Atrius 3-Position Forced Reset Selector (Installed)**<br><br>(Plaintiff-generated renderings of the Atrius 3-Position Forced Reset Selector here and below) |

| '159 Patent Claim 1 | Infringing Device (Atrius 3-Position Forced Reset Selector) |
|---|---|
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Atrius Forced Reset Selector (**Yellow**) is installed in a fire control mechanism pocket of a receiver along with a hammer (**Red**) that has a sear surface and a hook for engaging a disconnector (**Orange**).<br><br>**Atrius 3-Position Forced Reset Selector, installed** |
| to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt means, | The hammer (**Red**) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt means.<br><br>**Hammer Set Position** |

| '159 Patent Claim 1 | Infringing Device (Atrius 3-Position Forced Reset Selector) |
|---|---|
| | **Hammer Released Position** |
| a trigger member having a trigger sear surface and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis<br><br>between set and | The Atrius **3-Position** Forced Reset Selector **(Yellow)** is installed with a trigger member **(Brown)** in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member has a sear surface.<br><br> **Trigger Member Set Position** |

| '159 Patent Claim 1 | Infringing Device (Atrius 3-Position Forced Reset Selector) |
|---|---|
| released positions, |  **Trigger Member Released Position** |
| wherein the trigger member sear surface and hammer sear surface are in engagement in the set positions of the hammer and trigger member | The sear surface of the trigger member (**Brown**) and sear surface of the hammer (**Red**) are in engagement when the hammer and trigger member are in their set positions.   **Trigger Member and Hammer Member Set Position** |
| and are out of engagement in the released positions of the hammer and trigger member, | The sear surface of the trigger member (**Brown**) and sear catch surface of the hammer (**Red**) are out of engagement in the released position. |

| '159 Patent Claim 1 | Infringing Device (Atrius 3-Position Forced Reset Selector) |
|---|---|
| | <br><br>**Trigger Member and Hammer Member Released Positions** |
| the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | The disconnector **(Orange)** is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer **(Red)**.<br><br><br><br>**Disconnector Hook Engaged Above** |

COMPLAINT - 40 -

| '159 Patent Claim 1 | Infringing Device (Atrius 3-Position Forced Reset Selector) |
|---|---|
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Atrius 3-Position Forced Reset Selector has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket.  (*See* image above depicting Atrius Forced Reset Selector, shown in yellow, in fire control mechanism pocket)<br><br><br><br>**Atrius 3-Position Forced Reset Selector Cam with Lobe and Lever** |
| the cam being movable between a first position and a second position, in the second position the cam lobe forces the trigger member toward the set position, | The cam is movable between a first position and a second position.<br><br><br><br>**Cam and Lobe First Position** |

| '159 Patent Claim 1 | Infringing Device (Atrius 3-Position Forced Reset Selector) |
|---|---|
|  | In the second position, the cam lobe forces the trigger member **(Brown)** toward the set position when the cam is in the forced reset semi-automatic mode.<br><br><br><br>**Cam and Lobe Second Position** |
| whereupon in the first mode, | While in the first (standard semi-automatic) mode,<br><br><br><br>**Cam in the First (Semi-Automatic) Mode** |
| rearward movement of the bolt means causes rearward pivoting of the hammer such | Rearward movement of the bolt means causes rearward pivoting of the hammer **(Red)** such that the disconnector **(Orange)** hook catches the hammer hook. |

| '159 Patent Claim 1 | Infringing Device (Atrius 3-Position Forced Reset Selector) |
|---|---|
| that the disconnector hook catches the hammer hook, | <br><br>**Disconnector Hook Catches the Hammer** |
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery, |

| '159 Patent Claim 1 | Infringing Device (Atrius 3-Position Forced Reset Selector) |
|---|---|
| | **Pressure on Trigger Member Prevents Reset** |
| at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm, and | at which time a user must manually reduce pressure on the trigger member **(Brown)** to free the hammer **(Red)** from the disconnector **(Orange)** to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. **Reduced Pressure on Trigger Member Allows Reset** |

COMPLAINT - 44 -

| '159 Patent Claim 1 | Infringing Device (Atrius 3-Position Forced Reset Selector) |
|---|---|
| whereupon in a second mode, | When in the second (forced reset semi-automatic) mode, <br><br> **Cam in the Second (Forced-Reset Semi-Automatic) Mode** |
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer, | Rearward movement of the bolt means causes rearward pivoting of the hammer (**Red**) and the cam to force the trigger member toward the reset position such that the disconnector (**Orange**) hook is prevented from holding the hammer hook. |
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery and the hammer moves to its reset position, |

| '159 Patent Claim 1 | Infringing Device (Atrius 3-Position Forced Reset Selector) |
|---|---|
| |  |
| at which time the user can pull the trigger member to fire the firearm. | at which time the user can pull the trigger member **(Brown)** to fire the firearm without having to first release pressure on the trigger member. |

90.　　On information and belief, Defendants also contribute to the infringement of the

'159 Patent by others, including their customers. Acts by Defendants that contribute to the

COMPLAINT - 46 -

infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the infringing device, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '159 Patent.

91. Defendants have engaged in egregious infringement behavior with knowledge of the '159 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '159 Patent and that the '159 Patent is valid at least through the service and filing of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '159 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '159 Patent.

92. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '159 Patent pursuant to 35 U.S.C. § 271.

93. By their actions, Defendants' infringement of the '159 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

94. By their actions, Defendants' infringement of the '159 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

95. Defendants' infringement of the '159 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

96.     Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

97.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT IV –INFRINGEMENT OF THE '223 PATENT

98.     Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

99.     In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '223 patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '223 patent. Such unlicensed products include the Partisan Disruptor.

100.    On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '223 patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents.

101.    An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 4 of the '223 Patent is illustrated in the chart below:

| '223 Patent Claim 4 | Infringing Device (Disruptor) |
| --- | --- |
| 4. For a firearm having a receiver with a fire control mechanism pocket, assembly pin openings in side walls of the pocket, | The Infringing Device is for an AR-pattern firearm, which has a lower receiver with a fire control pocket and assembly pin openings in side walls of the pocket. |

| '223 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| and a bolt carrier that reciprocates and pivotally displaces a hammer when cycled, a trigger mechanism, comprising: | **Fire Control Mechanism Pocket**<br><br>An AR-pattern firearm has a bolt carrier that reciprocates and pivotally displaces a hammer when cycled.<br><br>**Bolt Carrier** |
| a housing having transversely aligned pairs of openings for receiving hammer and trigger assembly pins; | The Infringing Device includes a housing with transversely aligned pairs of openings for receiving hammer and trigger assembly pins.<br><br>**Hammer and trigger pins** |

| '223 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
|  | (Plaintiff–generated renderings of the Disruptor here and below) |
| a hammer having a sear notch and mounted in the housing to pivot on a transverse axis | The Infringing Device includes a hammer (**Blue**) with a sear notch and is mounted in the housing to pivot on a transverse axis. |
| between set and | |

| '223 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
|  | **Set position** |
| released positions; | **Released position** |
| a trigger member having a sear and mounted in the housing to pivot on a transverse axis | The infringing device has a trigger member **(Green)** that has a sear and is mounted in a housing to pivot on a transverse axis. |

| '223 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| between set | <br><br>**Set position** |
| and released positions,<br><br><br>the trigger member having a surface positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled, | <br><br>**Released position**<br><br>The trigger member (**Green**) has a surface positioned to be contacted by a surface of the hammer (**Blue**) |

| '223 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| the contact causing the trigger member to be forced to the set position; | The hammer **(Blue)** pivots rearward causing the trigger **(Green)** to be forced to the set position. |

| '223 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| | |
| a locking bar pivotally mounted in the housing | The Infringing Device includes a locking bar **(Red)** that is pivotally mounted in the housing.<br><br> |
| and spring biased toward a first position<br><br>in which the locking bar mechanically blocks the trigger member from moving to the released position, | The locking bar is spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position. |

| '223 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| |  **First position mechanically blocked** |
| and movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position  in which the trigger member can be moved by an external force to the released position. | The locking bar is movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position.  In this position, the trigger member can be moved by an external force (pull by the trigger finger) to the released position.  |

102.    On information and belief, Defendants also contribute to the infringement of the '223 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation

by Defendants of the components of the infringing device, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '223 Patent.

103.    Defendants have engaged in egregious infringement behavior with knowledge of the '223 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '223 Patent and that the '223 Patent is valid at least through the service and filing of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '223 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '223 Patent.

104.    By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '223 Patent pursuant to 35 U.S.C. § 271.

105.    By their actions, Defendants' infringement of the '223 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

106.    By their actions, Defendants' infringement of the '223 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

107.    Defendants' infringement of the '223 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

108. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

109. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT V –INFRINGEMENT OF THE '003 PATENT

110. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

111. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '003 patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '003 patent. Such unlicensed products include the Disruptor.

112. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '003 patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents.

113. An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 4 of the '003 Patent is illustrated in the chart below:

| '003 Patent Claim 4 | Infringing Device (Disruptor) |
| --- | --- |
| 4. A firearm trigger mechanism comprising: | The Infringing Device is a firearm trigger mechanism. |
| a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair | The Infringing Device includes a housing (Black) that has a first pair of transversely aligned openings for receiving a hammer pin and a second |

| '003 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| of transversely aligned openings for receiving a trigger member pin, | pair of transversely aligned openings for receiving a trigger member pin.<br><br>The Infringing Device is sold with hammer and trigger pins. |
| a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin | The Infringing Device includes a hammer **(Blue)** that has a sear catch and a hook for engaging a disconnector. It is mounted in the housing to pivot on the hammer pin between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier. |

| '003 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| | (Plaintiff-generated renderings of the Disruptor here and below) |
| between set and | **Set position** |

| '003 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, |

**Released position** |
| a trigger member having a sear and mounted in said housing to pivot on said trigger member pin | The Infringing Device includes a trigger member **(Green)** that has a sear and is mounted in the housing to pivot on the trigger member pin |
| between set |

**Set position** |

COMPLAINT - 60 -

| '003 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| and released positions, | <br><br>**Released position** |
| said trigger member having a surface positioned to be contacted by a surface of said hammer | The trigger member **(Green)** has a surface positioned to be contacted by a surface of the hammer **(Blue)**<br><br> |
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | The hammer **(Blue)** pivots rearward causing the trigger **(Green)** to be forced to the set position. |

| '003 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| | |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are engaged in the set position <br><br> <br><br> **(Set position)** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are out of engagement in the released position |

COMPLAINT - 62 -

| '003 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| | **Released position** |
| a disconnector having a hook for engaging said hammer | The infringing device has a disconnector (**Orange**) that has a hook for engaging the hammer (**Blue**) hook<br><br> |
| and mounted in said housing to pivot on said trigger member pin, | The disconnect is mounted in the housing to pivot on the trigger (**Green**) member pin |

| '003 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| | |
| a locking member mounted in said housing to pivot on a transverse locking member pin, | The infringing device has a locking member **(Red)** that is mounted in the housing and it pivots on a transverse locking member pin |
| said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position | When the locking bar **(Red)** is in the first position, the locking member blocks the trigger **(Green)** from being pulled |

| '003 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| | <br>**First position - mechanically blocked** |
| and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, | When the locking bar **(Red)** is in the second position, it does not prevent the trigger **(Green)** from being pulled<br><br>**Second position - not mechanically blocked** |
| said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | The locking member **(Red)** is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position. |

| '003 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, | The Infringing Device includes a safety selector that is mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions.<br><br><br>Safety Selector |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook,<br><br>at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer **(Blue)** to pivot and the disconnect **(Orange)** hook catches the hammer hook<br><br><br><br>**Standard semi-automatic position** |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, | When the infringing device is in the forced reset semi-automatic position rearward movement of the bolt carrier causes the hammer **(Blue)** to pivot which causes the trigger **(Green)** to be forced to the set position. |

COMPLAINT - 66 -

| '003 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| | <br>**Trigger pulled to the rear, hammer first touches the trigger**<br><br>**Hammer has now caused the trigger to move to the reset position** |
| said safety selector preventing said disconnector hook from catching said hammer hook,<br><br><br>. | The safety selector prevents the disconnector **(Orange)** hook from catching the hammer **(Blue)** hook |

| '003 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| |  **Set position** |
| and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member | When the bolt carrier reaches a substantially in-battery position the user can pull the trigger **(Green)** without manually releasing pressure off the trigger |

114.    On information and belief, Defendants also contribute to the infringement of the

'003 Patent by others, including their customers. Acts by Defendants that contribute to the

infringement of others include, but are not limited to, the sale, offer for sale, and/or importation

by Defendants of the components of the infringing device, such as the trigger assembly. The

components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '003 Patent.

115.    Defendants have engaged in egregious infringement behavior with knowledge of the '003 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '003 Patent and that the '003 Patent is valid at least through the service and filing of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '003 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '003 Patent.

116.    By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '003 Patent pursuant to 35 U.S.C. § 271.

117.    By their actions, Defendants' infringement of the '003 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

118.    By their actions, Defendants' infringement of the '003 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

119.    Defendants' infringement of the '003 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

120.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

121.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT VI –INFRINGEMENT OF THE '336 PATENT

122.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

123.    In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '336 patent, including but not limited to claim 3, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '336 patent. Such unlicensed products include the Partisan Disruptor.

124.    On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '336 patent, including but not limited to claim 3, literally and/or under the doctrine of equivalents.

125.    An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 3 of the '336 Patent is illustrated in the chart below:

| '336 Patent Claim 3 | Infringing Device (Disruptor) |
|---|---|
| 3. A firearm trigger mechanism comprising: | The Infringing Device is a firearm trigger mechanism. |
| a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, | The Infringing Device includes a housing that has a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin. |

COMPLAINT - 70 -

| '336 Patent Claim 3 | Infringing Device (Disruptor) |
|---|---|
|  | **First Openings** — **Housing** — **Second Openings** The Infringing Device is sold with hammer and trigger pins. **Hammer and trigger pins** |
| a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin | The Infringing Device includes a hammer **(Blue)** that has a sear catch and a hook for engaging a disconnector. It is mounted in the housing to pivot on the hammer pin between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier. |

| '336 Patent Claim 3 | Infringing Device (Disruptor) |
|---|---|
| | (Plaintiff-generated renderings of the Disruptor here and below) |
| between set and | **Set position** |

| '336 Patent Claim 3 | Infringing Device (Disruptor) |
|---|---|
| released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | **Released position** |
| a trigger member having a sear and mounted in said housing to pivot on said trigger member pin<br><br>between set | The Infringing Device includes a trigger member **(Green)** that has a sear and is mounted in the housing to pivot on the trigger member pin<br><br>**Set position** |

COMPLAINT - 73 -

| '336 Patent Claim 3 | Infringing Device (Disruptor) |
|---|---|
| and released positions, | **Released position** |
| said trigger member having a surface positioned to be contacted by a surface of said hammer | The trigger member **(Green)** has a surface positioned to be contacted by a surface of the hammer **(Blue)** |
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | The hammer **(Blue)** pivots rearward causing the trigger **(Green)** to be forced to the set position |

| '336 Patent Claim 3 | Infringing Device (Disruptor) |
|---|---|
| | |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are engaged in the set position **(Set position)** |

| '336 Patent Claim 3 | Infringing Device (Disruptor) |
|---|---|
| and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are out of engagement in the released position<br><br><br><br>**Released position** |
| a disconnector having a hook for engaging said hammer | The infringing device has a disconnector **(Orange)** that has a hook for engaging the hammer **(Blue)** hook<br><br> |
| and mounted in said housing to pivot on said trigger member pin, | The disconnect is mounted in the housing to pivot on the trigger **(Green)** member pin |

COMPLAINT - 76 -

| '336 Patent Claim 3 | Infringing Device (Disruptor) |
|---|---|
| | |
| a locking member mounted in said housing to pivot on a transverse locking member pin, | The infringing device has a locking member **(Red)** that is mounted in the housing and it pivots on a transverse locking member pin. |
| said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position | When the locking bar (Red) is in the first position, the locking member blocks the trigger **(Green)** from being pulled |

| '336 Patent Claim 3 | Infringing Device (Disruptor) |
|---|---|
| | **First position - mechanically blocked** |
| and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, | When the locking bar (**Red**) is in the second position, it does not prevent the trigger (**Green**) from being pulled. **Second position - not mechanically blocked** |
| said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | The locking member (**Red**) is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position. |

| '336 Patent Claim 3 | Infringing Device (Disruptor) |
|---|---|
| a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, | The Infringing Device includes a safety selector that is mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions.<br><br><br>**Safety Selector** |
| said safety selector configured such that, when said safety selector is in said forced reset semi-automatic position, said safety selector causes said disconnector to be repositioned and in doing so prevents said disconnector hook from catching said hammer hook, | While in the forced reset semi-automatic position the disconnect (**Orange**) moves to a position that does not allow the disconnector hook to catch the hammer (**Blue**) hook<br><br><br><br>**Forced reset semi-automatic position** |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer (**Blue**) to pivot and the disconnect (**Orange**) hook catches the hammer hook |

| '336 Patent Claim 3 | Infringing Device (Disruptor) |
|---|---|
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | **Standard semi-automatic position** |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, | When the infringing device is in the forced reset semi-automatic position rearward movement of the bolt carrier causes the hammer **(Blue)** to pivot which causes the trigger **(Green)** to be forced to the set position.<br><br>**Trigger pulled to the rear, hammer first touches the trigger** |

COMPLAINT - 80 -

| '336 Patent Claim 3 | Infringing Device (Disruptor) |
|---|---|
| | **Hammer has now caused the trigger to move to the reset position** |
| said safety selector preventing said disconnector hook from catching said hammer hook, | The safety selector prevents the disconnector **(Orange)** hook from catching the hammer **(Blue)** hook **Set position** |
| and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When the bolt carrier reaches a substantially in-battery position the user can pull the trigger **(Green)** without manually releasing pressure off the trigger |

COMPLAINT - 81 -

126.    On information and belief, Defendants also contribute to the infringement of the '336 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the infringing device, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '336 Patent.

127.    Defendants have engaged in egregious infringement behavior with knowledge of the '336 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '336 Patent and that the '336 Patent is valid at least through the service and filing of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '336 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '336 Patent.

128.    By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '336 Patent pursuant to 35 U.S.C. § 271.

129.    By their actions, Defendants' infringement of the '336 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

130.    By their actions, Defendants' infringement of the '336 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

131.    Defendants' infringement of the '336 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

132.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

133.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT VII –INFRINGEMENT OF THE '807 PATENT

134.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

135.    In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '807 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '807 patent. Such unlicensed products include the Disruptor.

136.    On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '807 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

137.    An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 1 of the '807 Patent is illustrated in the chart below:

COMPLAINT - 83 -

| '807 Patent Claim 1 | Infringing Device (Disruptor) |
|---|---|
| A firearm trigger mechanism comprising: | The Infringing Device is a firearm trigger mechanism. |
| a hammer having a sear catch and a hook and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis | The Infringing Device includes a hammer (**Blue**) that has a sear catch and a hook for engaging a disconnector. It is mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier. |
| | **Hammer** |
| between set and | **(Plaintiff-generated renderings of the Disruptor here and below)** |
| | **Set position** |

COMPLAINT - 84 -

| '807 Patent Claim 1 | Infringing Device (Disruptor) |
|---|---|
| released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | **Released position** |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis<br><br>between set | The Infringing Device includes a trigger member **(Green)** that has a sear and is mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis<br><br>**Set position** |

| '807 Patent Claim 1 | Infringing Device (Disruptor) |
|---|---|
| and released positions, | <br><br>**Released position** |
| said trigger member having a surface positioned to be contacted by a surface of said hammer | The trigger member **(Green)** has a surface positioned to be contacted by a surface of the hammer **(Blue)** |
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | The hammer **(Blue)** pivots rearward causing the trigger **(Green)** to be forced to the set position |

| '807 Patent Claim 1 | Infringing Device (Disruptor) |
|---|---|
| | |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are engaged in the set position **Set position** |

COMPLAINT - 87 -

| '807 Patent Claim 1 | Infringing Device (Disruptor) |
|---|---|
| and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are out of engagement in the released position <br><br> **Released position** |
| a disconnector having a hook for engaging said hammer hook | The infringing device has a disconnector **(Orange)** that has a hook for engaging the hammer **(Blue)** hook |
| and adapted to be mounted in the fire control mechanism pocket to | The disconnect is mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis |

| '807 Patent Claim 1 | Infringing Device (Disruptor) |
|---|---|
| pivot on a transverse disconnector pivot axis, | |
| a locking member adapted to be movably mounted in the fire control mechanism pocket, | The infringing device has a locking member **(Red)** that is movably mounted in the fire control mechanism pocket and it is movable between a first position and a second position.<br><br> |
| said locking member being movable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position | When the locking bar **(Red)** is in the first position, the locking member blocks the trigger **(Green)** from being pulled |

| '807 Patent Claim 1 | Infringing Device (Disruptor) |
|---|---|
| | **First position - mechanically blocked** |
| and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position,

said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | When the locking bar **(Red)** is in the second position, it does not prevent the trigger **(Green)** from being pulled

**Second position - not mechanically blocked**

The locking member **(Red)** is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position |

| '807 Patent Claim 1 | Infringing Device (Disruptor) |
|---|---|
| a safety selector adapted to be movably mounted in the fire control mechanism pocket to move between safe, standard semi-automatic, and forced reset semi-automatic positions, | The Infringing Device includes a safety selector that is mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions.<br><br> |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook,<br><br>at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer (**Blue**) to pivot and the disconnect (**Orange**) hook catches the hammer hook<br><br><br><br>**Standard semi-automatic position** |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, | When the infringing device is in the forced reset semi-automatic position rearward movement of the bolt carrier causes the hammer (**Blue**) to pivot which causes the trigger (**Green**) to be forced to the set position. |

| '807 Patent Claim 1 | Infringing Device (Disruptor) |
|---|---|
| | **Trigger pulled to the rear, hammer first touches the trigger** **Hammer has now caused the trigger to move to the reset position** |
| said safety selector preventing said disconnector hook from catching said hammer hook, | The safety selector prevents the disconnector **(Orange)** hook from catching the hammer **(Blue)** hook. |

| '807 Patent Claim 1 | Infringing Device (Disruptor) |
|---|---|
| | **Set position** |
| and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When the bolt carrier reaches a substantially in-battery position the user can pull the trigger **(Green)** without manually releasing pressure off the trigger. |

138. On information and belief, Defendants also contribute to the infringement of the '807 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the infringing device, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and

adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '807 Patent.

139.    Defendants have engaged in egregious infringement behavior with knowledge of the '807 Patent, which was duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '807 Patent and that the '807 Patent is valid at least through the service and filing of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '807 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '807 Patent.

140.    By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '807 Patent pursuant to 35 U.S.C. § 271.

141.    By their actions, Defendants' infringement of the '807 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

142.    By their actions, Defendants' infringement of the '807 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

143.    Defendants' infringement of the '807 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

144.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

145.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

**COUNT VIII –INFRINGEMENT OF THE '403 PATENT**

146.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

147.    In violation of 35 U.S.C. § 271, as of the date of its issuance, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '403 Patent, including but not limited to claim 38, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '403 Patent. Such unlicensed products include the Atrius 3-Position Forced Reset Selector, the Atrius 3-Position Ambidextrous Forced Reset Selector, and the Disruptor.

148.    On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '403 Patent, including but not limited to claim 38, literally and/or under the doctrine of equivalents.

149.    Claim 38 of the '403 Patent covers at least the Atrius 3-Position Forced Reset Selector, the Atrius 3-Position Ambidextrous Forced Reset Selector, and the Disruptor. By way of nonlimiting example, an exemplary comparison of the Disruptor, when assembled and used as intended, with claim 38 of the '403 Patent is illustrated in the chart below:

| Claim Language | Infringing Device (Disrupter) |
|---|---|
| 38.   A forced reset trigger mechanism, comprising: | The Disruptor is a forced reset trigger mechanism. |

| | **Hammer and trigger pins** |
|---|---|
| a hammer having a hammer hook and adapted to pivot on a transverse hammer pivot axis; | The Disrupter has a hammer **(Blue)** that has a hammer hook and pivots on a transverse axis.<br><br>Hammer hook<br><br>Pivot axis<br><br>(Plaintiff-generated renderings of Disruptor here and below) |
| a disconnector having a disconnector hook and adapted to pivot on a transverse disconnector pivot axis; a trigger member; and | The Disrupter has a disconnector **(Orange)** which has a disconnector hook and pivots on a transverse disconnector pivot axis.<br><br>The Disrupter has a trigger member **(Green)** |

COMPLAINT - 96 -



| | |
|---|---|
| | **Disconnector** / **Disconnector pivot axis** |
| a safety selector adapted to be movable between a standard semi-automatic position and a forced reset semi-automatic position, | The Disruptor has a safety selector adapted to be movable between a standard semi-automatic position, **Safety selector** **Safety Selector in Standard Semi-Automatic Position** . . . and a forced reset semi-automatic) position, |



| | |
|---|---|
| | **Safety Selector in Forced Reset Semi-Automatic Position** |
| wherein when the safety selector is in the standard semi-automatic position and the trigger member is rearwardly actuated, | When safety selector is in the standard semi-automatic position and the trigger member (**Green**) is rearwardly actuated. |
| and after the hammer pivots rearward to a position where the hammer hook is past the disconnector hook, | . . . cycling of the action causes the hammer (**Blue**) **to** pivot rearward to a position where the hammer hook is past the disconnector hook (**Orange**), |



| | |
|---|---|
| rearward pressure on the trigger member must be reduced to permit the trigger member to then be actuated to fire a firearm. | Rearward pressure on the trigger member **(Green)** must be reduced to allow the trigger member to reset so it to then can be actuated to fire a firearm. |

150.    An exemplary comparison of the Atrius 3-Position Forced Reset Selector, when assembled and used as intended, with claim 38 of the '403 Patent is illustrated in the chart below:

| '403 Patent Claim 38 | The Atrius Selector |
|---|---|
| 38. A forced reset trigger mechanism, comprising: | When installed and used as directed, the Atrius Selector is part of a forced reset trigger mechanism.<br><br><br><br>https://www.sportsmansoutdoorsuperstore.com/products2.cfm/ID/352866/adgfrss/atrius-3-position-forced-reset-selector-compatible-with-mil-spec-ar-15 and https://atrius.dev/atrius-forced-reset-selector/ |
| a hammer having a hammer hook and adapted to pivot on a transverse hammer pivot axis; | The Atrius Selector (yellow) is installed in a fire control mechanism pocket along with a hammer (red) that has a hammer hook and pivots on a transverse axis.<br><br><br><br>**Atrius Selector (Installed)**<br><br>(Plaintiff-generated renderings of Atrius Selector here and below) |

| '403 Patent Claim 38 | The Atrius Selector |
|---|---|
| a disconnect or having a disconnect or hook and adapted to pivot on a transverse disconnect or pivot axis; a trigger member; and | The Atrius Selector is installed along with a disconnector (orange) which has a disconnector hook and pivots on a transverse disconnector pivot axis, and a trigger member (brown).<br><br><br><br>**Disconnector and Trigger Member** |
| a safety selector adapted to be movable between a standard semi-automatic position | The Atrius Selector is a safety selector adapted to be movable between a standard semi-automatic position,<br><br><br><br>**Atrius Selector (installed) in Standard Semi-Automatic Position** |

| '403 Patent Claim 38 | The Atrius Selector |
|---|---|
| and a forced reset semi-automatic position, | . . . and a forced reset semi-automatic position.<br><br>**Atrius Selector (installed) in Forced Reset Semi-Automatic Position** |
| wherein when the safety selector is in the standard semi-automatic position and the trigger member is rearwardly actuated, | When safety selector is in the standard semi-automatic position the trigger member (brown) is rearwardly actuated. |

| '403 Patent Claim 38 | The Atrius Selector |
|---|---|
| and after the hammer pivots rearward to a position where the hammer hook is past the disconnector hook, | The hammer (red) pivots rearward to a position where the hammer hook is past the disconnector hook (orange),<br><br> |
| rearward pressure on the trigger member must be reduced to permit the trigger member to then be actuated to fire a firearm. | Rearward pressure on the trigger member (brown) must be reduced to permit the trigger member to then be actuated to fire a firearm. |

151. On information and belief, Defendants also contribute to the infringement of the '403 Patent by others, including their customers. Acts by Defendants that contribute to the

infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the infringing device, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '403 Patent.

152. Defendants have engaged in egregious infringement behavior with knowledge of the '403 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '403 Patent and that the '403 Patent is valid at least through the service and filing of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '403 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '403 Patent.

153. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '403 Patent pursuant to 35 U.S.C. § 271.

154. By their actions, Defendants' infringement of the '403 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

155. By their actions, Defendants' infringement of the '403 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

156. Defendants' infringement of the '403 Patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

157. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

158. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT IX – FEDERAL TRADEMARK INFRINGEMENT
### 15. U.S.C. § 1141(1)

159. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

160. Rare Breed is the exclusive licensee of all substantial rights in the FRT Marks in connection with firearm triggers.

161. The federal trademark registrations for the FRT Marks as detailed above are in full force and effect. Plaintiff Rare Breed owns all substantial rights in and to enforce these federal trademark registrations.

162. The FRT Marks are inherently distinctive and have acquired significant goodwill in the marketplace through Rare Breed's continuous and substantially exclusive use of those marks in commerce. As a result of their widespread and continuous use, the FRT Marks have become uniquely associated in the minds of consumers and the trade with Rare Breed.

163. The reputation Rare Breed has built in the FRT Marks is of great value to Rare Breed.

164. Rare Breed's use of and substantial rights in the FRT Marks predate any use by Defendants of FRT.

165.    Defendants are wrongfully using FRT as a source identifier in U.S. commerce in connection with the distribution, advertising, and/or sale of firearm trigger products.

166.    Defendants' use of the FRT Marks was and is without Rare Breed's consent. Such unauthorized use by Defendants is likely to confuse consumers as to the origin, sponsorship, endorsement, or affiliation of Defendants' products, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

167.    Defendants' unlawful acts have caused and, unless enjoined by this Court pursuant to 15 U.S.C. § 1116, will continue to cause great harm and irreparable injury to Rare Breed for which Rare Breed has no adequate remedy at law, including undermining consumers' association of the FRT Marks with Rare Breed.

168.    Rare Breed is entitled to injunctive relief prohibiting Defendants from using the FRT Marks and any mark confusingly similar to the FRT Marks.

169.    Upon information and belief, Defendants have realized unjust profits, gains, and advantages from their unlawful actions, including by making sales under the FRT Marks, and have caused Rare Breed monetary damage in an amount to be determined at trial.

## COUNT X – FALSE DESIGNATION OF ORIGIN
## 15 U.S.C. § 1125(A)

170.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

171.    Plaintiff Rare Breed owns substantial rights in the distinctive FRT Marks in connection with firearm triggers through its continuous and substantially exclusive use of the FRT Marks since at least as early as 2020, which is well before any use of FRT by Defendants.

172.    Rare Breed's common law rights in the FRT Marks predate Defendants' infringing use of FRT and any other confusingly similar name or mark comprised of or containing FRT.

COMPLAINT - 106 -

173.     Defendants are using FRT as a source identifier in U.S. commerce in connection with the distribution, advertising, and/or sale of firearm trigger products.

174.     Defendants' actions described above constitute use of a false designation of origin that wrongfully and falsely designates the origin of Defendants' goods and services and is likely to cause confusion or mistake and/or to deceive as to affiliation, connection, or association or as to the origin, sponsorship, or approval of Defendants' goods by Rare Breed. These actions constitute a false designation of origin in interstate commerce in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

175.     Defendants' unlawful acts, which were committed and continue to be committed with full knowledge of Rare Breed's prior rights in the FRT Marks, are knowing, willful, and done in bad faith.

176.     Defendants' acts have caused and, unless enjoined by this Court pursuant to 15 U.S.C. § 1116, will continue to cause, great harm and irreparable injury to Rare Breed for which Rare Breed has no adequate remedy at law, including undermining consumers' association of the FRT Marks with Plaintiffs.

177.     entitled to injunctive relief prohibiting Defendants from using the FRT Marks or any other mark confusingly similar to the FRT Marks.

178.     Upon information and belief, Defendants have realized unjust profits, gains, and advantages from their unlawful actions, including by making sales under the FRT Marks, and have caused Rare Breed monetary damage in an amount to be determined at trial.

## COUNT XI – COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

179.     Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

180. As described above, RBTM owns, and Rare Breed has the exclusive right to enforce the distinctive FRT Marks in connection with firearm triggers through its continuous use of the marks since at least as early 2020, prior to any use of FRT by Defendants.

181. Rare Breed's common law rights in the FRT Marks predate Defendants' infringing use of FRT and/or other confusingly similar marks comprised of or containing FRT.

182. Defendants are using FRT as a source identifier in US commerce in connection with the distribution, sale, offering for sale, and advertising of firearm triggers.

183. Defendants' use of FRT was and is without Rare Breed's consent. Such unauthorized use by Defendants is likely to confuse consumers as to the origin, sponsorship, endorsement, or affiliation of Defendants' goods and services. As such, Defendants' acts constitute trademark infringement and unfair competition under common law.

184. Defendants' unlawful acts, which were committed and continue to be committed with full knowledge of Rare Breed's prior common law rights in the FRT Marks are knowing, willful, and done in bad faith.

185. Defendants' acts have caused and, unless enjoined by this Court, will continue to cause great harm and irreparable injury to Rare Breed for which it has no adequate remedy at law, including undermining consumers' association of the FRT Marks with Rare Breed's.

186. Rare Breed is entitled to injunctive relief prohibiting Defendants from using FRT or any other mark confusingly similar to the FRT Marks.

187. Upon information and belief, Defendants have realized unjust profits, gains, and advantages from their unlawful actions, including by making sales under the FRT mark, and have caused Rare Breed monetary damage in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter:

a. Each of the Asserted Patents has been and continues to be infringed by Defendants;

b. Defendants' infringement of each of the Asserted Patents has been, and continues to be, willful;

c. Each of the Asserted Patents is enforceable and not invalid;

d. A preliminary injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of each of the Asserted Patents during the pendency of this case, or other such equitable relief as the Court determines is warranted;

e. A permanent injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of each of the Asserted Patents, or other such equitable relief as the Court determines is warranted;

f. An award of damages adequate to compensate Plaintiffs for the infringement of each of the Asserted Patents that has occurred, together with pre-judgment interests and costs, post-judgment interests and costs, and an accounting;

g. An award of all other damages permitted by 35 U.S.C. § 284, including increased damages up to three times the amount of compensatory damages found;

h. A finding that this action is an exceptional case under 35 U.S.C. § 285 and an award to Plaintiffs of their costs and attorneys' fees incurred in this action; and

i. Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled or which this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request a trial by jury of any issues so triable by right.


DATED: May 28, 2026

Respectfully submitted,

/Glenn D. Bellamy/
Glenn D. Bellamy (OH Bar 0070321)
Wood Herron & Evans LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Tel: 513-707-0243
Email: gbellamy@whe-law.com

Matthew A. Colvin  (Pro Hac Vice)
Texas Bar No. 24087331
Carl E. Bruce  (Pro Hac Vice)
Texas Bar No. 24036278
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
E-mail: colvin@fr.com
         bruce@fr.com
Tel: (214) 747-5070
Fax: (214) 747-2091

Benjamin J. Christoff  (Pro Hac Vice)
DC Bar No. 1025635
**FISH & RICHARDSON P.C.**
1001 Maine Avenue SW, Suite 1000
Washington, DC 20024
E-mail: christoff@fr.com
Tel: (202) 783-5070
Fax: (202) 783-2331

*Attorneys for Plaintiffs*
*ABC IP, LLC, and Rare Breed Triggers, Inc.*